UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TONIA MARTIN, et al.,

                     Plaintiffs,

                             v.

MICHAEL WEINER as Commissioner of the Erie County
Department of Social Services, et al.,

                     Defendants.

**Hon. Hugh B. Scott**

06CV94

(CONSENT)

**Order**

Before the Court is defendants' objections to plaintiffs' proposed method of notice for the Rule 23(e) fairness hearing of their proposed settlement (Docket No. 52 (New York State defendants), No. 55 (County defendant)[1]).  After referring the fairness hearing to Magistrate Judge McCarthy (Docket No. 50), this Court set an accelerated briefing schedule on these issues, with the County defendant to file his position by November 7, 2007; plaintiffs to respond by November 9, 2007; any reply due by November 16, 2007; with this issue to be submitted by November 16, 2007 (Docket No. 53).

## BACKGROUND

This civil rights class action challenged the practices of Erie County Department of Social Services in the handling of Medicaid, food stamps, and public assistance applications in the wake of the Erie County budget crisis.  Plaintiffs are a class of Erie County residents who applied for public assistance (or may have applied for assistance) after June 1, 2005 (see Docket Nos. 30,

---

[1]In opposition, plaintiffs filed their attorney's declaration, Docket No. 59.

Am. Compl., 49, Order certifying class).  They alleged their class was a Rule 23(b)(2) class (Docket No. 30, Am. Compl. ¶ 7).  Defendants are Erie County Commissioner of Social Services Michael Weiner (hereinafter "the County defendant"), New York State Commissioner of State Office of Temporary and Disability Assistance Robert Doar, and New York State Commissioner of Department of Health Antonia Novello (collectively the "State defendants").

The parties consented to proceed before the undersigned as Magistrate Judge on September 4, 2007 (Docket No. 44).  The parties' stipulation settling this case was so ordered by the Court on October 29, 2007 (Docket No. 48), and the Court also certified this class (Docket No. 49), and consideration of the fairness of the settlement terms are now pending before the Court.

The Court conducted a status conference on October 2, 2007 (Docket No. 46).  At that conference, plaintiffs submitted their proposed class notices and Orders (see Docket Nos. 56, 57 (Court filed cover letter and proposed notices)).  Defendants voiced their objections to two aspects of the notice.  Plaintiffs wanted the notice of the fairness hearing to be posted on the websites for the Erie County Department of Social Services, and the New York State Office of Temporary and Disability Assistance and State Department of Health.  Defendants objected to having notice placed on those websites.  Second, defendants argued that they should not bear the total costs for notice to potential class members.  Other aspects of the proposed notice (such as posting notice in Erie County Department of Social Services' offices and other social services sites, and publication in the Buffalo News and The Challenger, plaintiffs' counsel distribution of the notices to advocacy groups, and on the counsel's websites, and the text of the notice in general) were agreeable to defendants.  On October 12, 2007, plaintiffs submitted to Chambers

their proposed Orders, including proposed Rule 23(e) notice Order and proposed notice to class members, and a cover letter arguing their position (Docket Nos. 57, 56; <u>see</u> Docket No. 51 (filed version of cover letter)).  Initially, plaintiffs contend that defendants' websites are their "electronic 'waiting rooms' for persons seeking information about public assistance," and thus are suitable places for publishing notice about this action (Docket No. 57, Pls. Atty. Letter, Oct. 12, 2007, at 1).  Plaintiffs included copies from defendants' website pages where the notices are proposed to go (Docket No. 56).

The State defendants argue that there is no basis for ordering defendants to post this notice on their websites and object to paying the costs for notice, citing <u>Eisen v. Carlisle & Jacqueline</u>, 417 U.S. 156 (1974), that costs either should be borne by plaintiffs or distributed among all parties (Docket No. 52, State Defs. Atty. Decl. ¶¶ 4, 5).  The County defendant joins in the co-defendants' arguments (<u>see</u> Docket No. 55, County Def. Atty. Decl.).  Defendants do not argue the hardship or expense in publishing this notice on their respective websites.  The State defendants argued, on October 2, 2007, that (as statewide agencies) notice for a settlement affecting one region of the state would not be appropriate for their websites and those sites were not proper fora for legal notices.

Plaintiffs responded during the October 2 conference that <u>Eisen</u> is not applicable here since that case was for notice of a pending class action under Rule 23(c)(2) and not for notice of settlement of a class action under Rule 23(e).  As for which party should bear the cost of the notice, plaintiffs contend that the plaintiff class members are indigent and cannot afford the notice costs, <u>see</u> <u>Duncan v. Goodyear Tire & Rubber Co.</u>, 66 F.R.D. 615 (E.D. Wis. 1975) (defendant bore notice cost to notify class of employees); <u>Kansas Hosp. Ass'n v. Whiteman</u>,

3

167 F.R.D. 144 (D. Kan. 1996) (defendant ordered to bear costs for notice to class of Medicaid recipients) (see Docket No. 59, Pls. Atty. Decl. ¶ 7).  They argue that recovery of notice costs is not a question of whether but of when, since they claim entitlement to reimbursement of such costs as prevailing parties under 42 U.S.C. § 1988, so defendants would pay (or repay) for these expenses in any event (see id. ¶ 9).  Plaintiffs respond that Eisen is distinguishable from this case, since the notice in that case was for Rule 23(c)(2) as opposed to the notice here of settlement of a class action and the fairness hearing.  They also distinguish Eisen by comparing the class members involved, with the pending case consisting of indigent social services applicants and the Eisen class shareholders.  (See id. ¶ 8.)  They note that Eisen itself distinguished that class from one seeking (as here) declaratory or injunctive relief (id.), see Eisen, supra, 417 U.S. at 177 n.14 (Rule 23(c)(2) not applicable to declaratory judgment or injunctive relief class actions).  They repeat their argument that defendants' websites are "electronic waiting rooms," and that notice there affords adequate contact to class members with disabilities (id. ¶¶ 5, 6).

## DISCUSSION

I.       Fairness Hearing Notice on Defendants' Websites

Federal Rule of Civil Procedure 23(e)(1)(B) requires the Court to direct notice "in a reasonable manner to all class members who would be bound by a proposed settlement."  Under Rule 23(c)(2)(A), there is a similar notice requirement once the Court determines to certify the class.  The Court has complete discretion as to how this notice is to be given, 7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1797.6, at 200 (Civil 3d ed. 2005).  Aside from individual mailed notice to known class members, see id., the more common forms of notice (being utilized here) involve posting notice in prominent places

where class members are apt to see it, <u>see</u> <u>Shuford v. Alabama State Bd. of Educ.</u>, 897 F. Supp.

1535, 1547-48 (M.D. Ala. 1999), and publication in general circulation newspapers.

Commentators have noted that other methods of notice exist, including television, radio, print

publications, and the Internet, 7B <u>Federal Practice and Procedure</u>, <u>supra</u>, § 1797.6 at 202; <u>see also</u>

<u>Thompson v. Met Life</u>, 216 F.R.D. 55, 68 (S.D.N.Y. 2003) (holding that notice to class,

including banner ad linked to website, met Rule 23(c)(2) and (e)); <u>In re Visa Check/Mastermoney</u>

<u>Antitrust Litig.</u>, No. CV-96-5238, 2002 U.S. Dist. LEXIS 23327, at *16 (E.D.N.Y. June 21,

2002) (order for publishing summary notice to "PR Newswire" which includes website and

Internet portals).

 The issue here is whether one aspect of that notice, posting of the notice on the

defendants' website pages, is a reasonable manner for notice.  Plaintiffs note that a segment of

the class, those with disabilities (<u>see</u> Docket No. 59, Pls. Atty. Decl. ¶ 6), can access the notice

online on defendants' websites where they may not have been able to go to defendants' physical

offices.  This use of the Internet for notice to class members is novel and, with the State

defendants' websites, may be over inclusive in notifying the entire state for a regionally based

class.  But this is the same effect of posting a notice in a general circulation newspaper where a

number of readers would not be interested class members.  The State defendants do not suggest

an alternative method from their websites to reach class members, particularly those with

disabilities that may prevent access to other places where the parties agree notice will be posted.

The County defendant generally states that the website notice will not provide adequate notice

(Docket No. 55, County Def. Decl. ¶ 4) without specifying the deficiencies in that notice.  The

web-based notice merely would provide either a link to the printed notice text (that the parties

agreed to) or reproduces that text on the website itself. Defendants fail to state why the medium

of their respective websites is inadequate or burdensome. Defendants do not complain about

additional cost or inconvenience in including the notice on their websites. Notwithstanding

defendants' objections, it is ordered that **notice shall be posted** on defendants' respective

websites.

II.     Costs of Publication

        A.     Standard

        Defendants next object to bearing the costs of publishing these notices. They cite to

Eisen, 417 U.S. 156 (Docket No. 52, State Defs. Atty. Decl. ¶ 5; Docket No. 55, County Def.

Atty. Decl. ¶ 5), although recognizing that Eisen concerned a Rule 23(c)(2) notice (prior to

certification of a class) and not a Rule 23(e) notice (prior to accepting a compromise or

settlement of a class action). Both provisions of Rule 23 require notice to the class members,

Fed. R. Civ. P. 23(c)(2)(A) (notice for class certified under Rule 23(b)(1) or (b)(2))[2]. The case

law distinguishes Rule 23(e) and 23(c)(2) regarding who bears the costs for the notices called for

under these provisions, see 5 Moore's Federal Practice § 23.162[5], at nn.24-26 (2007) (citing

cases).

        Under Rule 23(c)(2), Eisen holds that the plaintiff class representatives bear the costs for

notifying the other class members, 417 U.S. at 178-19; see Oppenheimer Fund, Inc. v. Sanders,

437 U.S. 340, 349-50 (1978) (Eisen held that where "a representative plaintiff prepares and mails

the class notice himself, he must bear the cost of doing so"). Note, both Eisen and Oppenheimer

---

[2]Cf. Rule 23(c)(2)(B), notice for class certified under Rule 23(b)(3), by the best notice
practicable to class members, see Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 349 (1978).

Fund arise in securities class action contexts, see Eisen, supra, 417 U.S. at 159; Oppenheimer

Fund, supra, 437 U.S. at 342-43, and do not involve alleged indigent class members or cases

(such as here) in which declaratory or injunctive relief is being sought, see Eisen, supra, 417 U.S.

at 177 n.14.  Ordinarily, the class representative bears the costs for notification in the class

certification context of Rule 23(c)(2), Oppenheimer Fund, supra, 437 U.S. at 349; 5 Moore's

Federal Practice § 23.162[5] at n.23.  The Oppenheimer Fund Court held that district court has

discretion to allocate notice cost among the parties, but the district court there abused that

discretion in allocating those costs to defendant based merely upon the costs being modest and

that defendant should have culled its records to identify class members (and presumably reduce

this cost), 437 U.S. at 342, 346, 350, 359-63.  The expense in Oppenheimer Fund was retrieval of

the list of class members from records held by a third party, at a cost of $16,000 if a third party

were to do the work, id. at 359-60.  The Oppenheimer Fund Court noted that, while a party's

ability to pay notice costs "in some circumstances" may be a consideration, id. at 361, "the test in

this respect normally should be whether the cost is substantial; not whether it is 'modest' in

relation to ability to pay," id. at 361-62.

     One commentator has noted that

> "Although Oppenheimer addressed certification notice under Rule 23(c)(2), courts
> have applied the Supreme Court's reasoning to notices of settlement, dismissal, or
> compromise under Rule 23(e).  While the reasoning is the same, the result is not.
> The representative plaintiff is not the sole party that seeks approval of a
> settlement, dismissal, or compromise.  Therefore, based on Oppenheimer, courts
> sometimes require defendants to perform tasks associated with providing notice of
> a proposed settlement, voluntary dismissal, or compromise of the claims, issues,
> or defenses, of a certified class.  For example, some courts have required
> defendants to enclose settlement notices in their own periodic mailings to class
> members.  Some courts have ordered defendants to advance the costs of the notice

process, with reimbursement allowed from the attorney's fees provided for in the settlement agreement.

5 <u>Moore's Federal Practice</u>, <u>supra</u>, § 23.162[5] (emphasis in original) (footnotes omitted).  For example, <u>Kansas Hospital Association v. Whiteman</u>, 167 F.R.D. 144, discussed below, involved application of Rule 23(e) and the district court held that defendant should bear the costs for notifying the class.

B.      Application

Neither party here has stated the overall costs for the notice or for the various forms of notice proposed.  Plaintiffs mentioned during the October 2, 2007, status conference that the estimated publication costs in the <u>Buffalo News</u> and <u>The Challenger</u> would be $5,000.  They later estimated these costs to be $4,362 (Docket No. 59, Pls. Atty. Decl. ¶ 7) and argue that the costs for posting this notice on defendants' websites to be minimal (<u>id.</u> ¶ 5).

In this case, the parties' ability to pay for notice costs should be a consideration, <u>cf.</u> <u>Oppenheimer Fund</u>, <u>supra</u>, 437 U.S. at 361.  Comparing the relative capacities of the parties, plaintiffs are a class of public assistance applicants or potential applicants, almost by definition incapable of affording the cost of notice to thousands of class members.  Plaintiffs argued on October 2, 2007, that they would recover from defendants as § 1988 costs any publication costs imposed upon them (<u>see id.</u> ¶ 9).  Meanwhile, defendants here are three state or municipal social service and health agencies.

The only other potential notice costs are the costs of duplicating the notices for posting at Erie County Social Services' offices and other area social services agencies and publication costs of the two area newspapers.

8

The district court's decision in <u>Kansas Hospital Association</u> is instructive.  There, defendant Secretary of the Kansas Department of Social and Rehabilitation Services attempted to raise the Medicaid copay, leading to plaintiffs filing their class action, 167 F.R.D. at 145.  After defendant revised her policy and both parties agreed to dismiss the action, the parties argued over which would assume the costs for notice to the class, <u>id.</u>  The court held that defendant agency should bear those costs, while noting that the general rule is the representative party for the class should bear these costs, <u>id.</u> at 146, quoting <u>Oppenheimer Fund</u>, <u>supra</u>, 437 U.S. at 359.  The district court cited the holding in <u>Oppenheimer Fund</u> that defendant there was ordered to bear notice costs and that the district court had the discretion to decide which party would assume that cost, <u>Kansas Hosp. Ass'n</u>, <u>supra</u>, 167 F.R.D. at 146 (citing <u>Oppenheimer Fund</u>, <u>supra</u>, 437 U.S. at 359).  The key to the district court was which party could more efficiently perform the tasks necessary to afford notice and that party thus should bear the costs related to those tasks, <u>id.</u> (quoting <u>Oppenheimer Fund</u>, <u>supra</u>, 437 U.S. at 350), finding that defendant agency could identify and notify class members through its existing distribution and notification systems, <u>id.</u>  Another factor noted by both courts was "whether the expense is substantial," <u>Oppenheimer Fund</u>, <u>supra</u>, 437 U.S. at 359 n.28; <u>Kansas Hosp. Ass'n</u>, <u>supra</u>, 167 F.R.D. at 146-47, where insubstantial costs are not passed to the class representatives and substantial costs but for tasks that defendants would ordinarily perform should be borne by defendants, <u>Oppenheimer Fund</u>, <u>supra</u>, 437 U.S. at 359 n.28; <u>Kansas Hosp. Ass'n</u>, <u>supra</u>, 167 F.R.D. at 147.  As with this case, defendant in <u>Kansas Hospital Association</u> did not cite the cost of producing mail inserts ("stuffers") containing the class notice in the thousands of mailings sent to Medicaid recipients, <u>Kansas Hosp. Ass'n</u>, <u>supra</u>, 167 F.R.D. at 147.

### 1.      Newspaper Publication

Here, the unusual (and chief) expense would be publication in the newspapers.  Unlike the <u>Kansas Hospital Association</u> case, <u>supra</u>, 167 F.R.D. at 147, or suggested in <u>Oppenheimer Fund</u>, <u>supra</u>, 437 U.S. at 359 n.28, that a regular mailing would go out from defendants to class members, this publication notice would be unusual.  As plaintiffs note, if these expenses were borne initially by them, defendants would face the expense as part of plaintiff's § 1988 fee and expense application.  Therefore, **defendants should bear** this expense in the first instance.

### 2.      Posting in Social Services Offices

The next expenses is the costs of duplicating the notices to be posted in Erie County Social Service and area service agency offices.  Defendants have not objected to this costs of publishing and posting involved here; thus, **defendants should bear** these expenses as well.

### 3.      Posting on Defendants' Websites

As stated above, defendants will post the notice on their respective websites.  Any change to their websites would be performed internally and the costs thereof absorbed by defendants.  Therefore, the notice costs shall be borne by **defendants**.

## CONCLUSION

For the reasons stated above, on defendants' objections to plaintiffs' proposed notice, notice of the fairness hearings **shall** be published on defendants' respective websites.  Defendants **shall** bear the costs of all notice in this action.

The parties shall contact Magistrate Judge McCarthy as to the schedule for the fairness

hearing before him before finalizing the notice and Order for notice.

So Ordered.

_____
/s/ Hugh B. Scott
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        November 28, 2007