UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TONIA MARTIN, DIANA GRAFF, VICKIE WOODS, and CYNTHIA CHESTNUT, on behalf of themselves and all others similarly situated,

                      Plaintiffs,

v.

MICHAEL WEINER, as Commissioner of the Erie County Department of Social Services; ROBERT DOAR, as Commissioner of the New York State Office of Temporary and Disability Assistance; and ANTONIA NOVELLO, as Commissioner of the New York State Department of Health,

                      Defendants.

**REPORT AND RECOMMENDATION**

06-CV-0094-HBS-JJM

---

This case was referred to me by Hon. Hugh B. Scott to conduct a fairness hearing and render a Report and Recommendation as to whether the Court should accept the proposed class action settlement (Dkt. #50). Pursuant to Fed. R. Civ. P. ("Rule") 23(e)(2), a fairness hearing was conducted before me on February 6, 2008. For the following reasons, I recommend that the Court accept the proposed Stipulation and Order of Settlement (the "Proposed Settlement") (Dkt. #48).

## BACKGROUND

On February 10, 2006, plaintiffs commenced this case as a class action challenging, *inter alia*, defendants' failure to process applications for food stamps, Medicaid, and cash assistance in a timely fashion, and State defendants' failure to supervise the County defendant's compliance with federal and state law (Dkt. #1). Specifically, plaintiffs allege that

defendants engage in a policy and practice of (a) deterring, discouraging, and preventing persons from filing applications for food stamps, Medicaid, and cash assistance; (b) failing to process all applications for food stamps, Medicaid, cash assistance, and emergency assistance within the time frames required by law; (c) failing to provide food stamps on an expedited basis to eligible persons in violation of federal and state law; and (d) failing to provide written notification of eligibility determinations as required by law; and that State defendants fail to oversee and supervise properly the County defendant's administration of the food stamp and Medicaid programs (Id.). Plaintiffs' complaint sought only injunctive relief (Id.).

Plaintiffs promptly moved for a temporary restraining order and for class certification (Dkt. ##12, 21). They were granted a temporary restraining order on February 21, 2006 (Dkt. #25). Thereafter, the complaint was amended to add additional parties (Dkt. ##29, 30), and the matter was referred to Magistrate Judge Scott for settlement purposes (Dkt. #34). Settlement conferences were conducted before Magistrate Judge Scott on December 12, 2006, January 10, 2007, February 28, 2007, May 9, 2007, and May 24, 2007. While settlement discussions continued, the deadlines for defendants' answer to the amended complaint and response to the class certification motion were held in abeyance.

A.      **The Proposed Settlement**

On August 27, 2007, counsel for all parties executed the Proposed Settlement (Dkt. #69, ¶5). The Proposed Settlement provides, in relevant part, that:

- The County defendant agrees not to deter, discourage or prevent persons from filing applications for food stamps, Medicaid or public assistance nor to induce the withdrawal of applications for assistance, and the County defendant agrees to provide all applicants and prospective applicants who seek assistance with complete and accurate information about the availability of assistance for which they apply (Dkt. #48, ¶¶11, 26).

- The County defendant agrees to (1) process all applications within the time frames required by applicable federal and state law (Id. at ¶¶16, 17, 18, 19, and 20); (2) screen applicant households to determine if they are eligible for expedited service of their food stamp application at the time of application and to provide expedited service to eligible persons (Id. at ¶15); (3) provide assistance to applicants to secure emergency medical care as needed (Id. at ¶21); (4) provide emergency or predetermination grants of assistance to persons who are determined to be in immediate need pending a determination of eligibility for assistance (Id. at ¶22); and (5) expeditiously enact changes to policy statements, manuals, and procedures to ensure that the County defendant's staff complies with the Proposed Settlement and to conduct training as necessary to ensure compliance with the Proposed Settlement (Id. at ¶27).

- The State defendants agree to monitor the County defendant's administration of the food stamp and Medicaid programs in compliance with applicable federal law (Id. at ¶25).

To monitor the County defendant's compliance with the timely processing requirements of the Proposed Settlement and applicable law, the Proposed Settlement mandates that the County defendant will provide plaintiffs' counsel with several monthly and weekly reports (Id. at ¶¶28-36). To ensure the reliability of those reports, defendants have agreed to a

sampling protocol by which cases involving applications for the various benefit programs are randomly or systematically drawn for review and determination of timely processing. Plaintiffs' counsel will be provided reports of the samples and data sets of all the cases reviewed (Id. at ¶¶38, 42). In the event one or more of the samples shows that one or more of the monitoring reports is not reliable, the parties will meet and confer for the purpose of developing a corrective action plan. If the parties cannot agree on the corrective action plan, the matter will be referred to the Court (Id. at ¶39).

In order to assess whether the County defendant is in compliance with its obligations concerning the expedited processing of food stamp applications, special sampling will be conducted every four months after the other required sampling is conducted. In this sampling, food stamp cases will be systematically or randomly sampled and reviewed to determine whether the applicant was eligible for expedited processing and, if eligible, whether food stamps were provided within five calendar days. The Proposed Settlement also requires the County defendant to provide reports of their reviews to plaintiffs' counsel (Id. at ¶¶40-41).

The Proposed Settlement also contains an informal review process by which plaintiffs' counsel may bring instances in which the application may not have been processed in accordance with applicable law for investigation and resolution (Id. at ¶46). Should judicial intervention be necessary, the Proposed Settlement provides for the Court to have continuing jurisdiction for at least 36 months, and further provides that plaintiffs may move for extensions of jurisdiction against specific defendants in the event the monitoring shows systemic non-compliance with the provisions of the Proposed Settlement requiring timely processing of applications for assistance or if the defendants responsible for the programs have failed to

provide the monitoring required by the Proposed Settlement (Id. at ¶¶59-60). The Proposed Settlement does not bar individual class members from seeking to compel the County defendant to provide an application for or grant of assistance or to expedite the processing of an application by way of an administrative hearing or in any court (Id. at ¶47).

On September 4, 2007, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. #44). On October 29, 2007, Magistrate Judge Scott approved the Proposed Settlement (Dkt. #48) and certified the following class:

> "All Erie County residents who, since June 1, 2005, have sought to apply for, applied for, are currently applying for, or will apply for food stamps, Medicaid and/or cash assistance in Erie County during the pendency of the Court's jurisdiction" (Dkt. #49).

On October 29, 2007, the Court also appointed plaintiffs' counsel, the Western New York Law Center and the National Center for Law and Economic Justice, as class counsel (Id.).

## B.     The Fairness Hearing

Because of his extensive participation in settling this case, Magistrate Judge Scott referred the matter to me to conduct a fairness hearing (Dkt. #50), and rescinded his approval of the Proposed Settlement pending my Report and Recommendation (Dkt. #61). After Magistrate Judge Scott ruled on defendants' objections to the proposed notice to class members (Dkt. #62), I issued an order pursuant to Rule 23(e) prescribing the deadlines and manner in which the notice to class members was to be posted, as well as setting the fairness hearing (Dkt. #67).

The parties have submitted declarations advising the Court that they have posted the notice to class members as proscribed in my order (Dkt. ##70, 72, 76), and I am satisfied that the notice was properly posted.

Pursuant to the notice to class members, written objections were to be postmarked by January 30, 2008. Class members were also invited to appear in person or by counsel at the fairness hearing to make oral objections. However, no written objections were received by the Court or the parties, and no individuals appeared at the fairness hearing to voice their objection to the Proposed Settlement. Plaintiff's counsel, Joseph Keleman, Esq., did advise me that he had received approximately twenty telephone inquires in response to the notice to class members, but that these calls were solely informational in nature.

Prior to the fairness hearing I received a declaration from plaintiffs' counsel Petra Tasheff, Esq., in support of the Proposed Settlement (Dkt. #69). At the fairness hearing, defendants' counsel advised me that they had no objections to Ms. Tasheff's Declaration.

During the fairness hearing I questioned the parties' counsel about the terms of the Proposed Settlement. I advised the parties that I was taking judicial notice of all filings in this case. The parties' counsel were given the opportunity to make further submissions following the hearing, but declined.

## DISCUSSION AND ANALYSIS

"A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in

arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F. 3d 96, 116 (2d Cir. 2005), cert. denied, 544 U.S. 1044 (2005). However, where, as here, class certification is simultaneous with that of settlement, "a clearer showing of a settlement's fairness, reasonableness and adequacy and the propriety of negotiations leading to it in such cases than where a class has been certified and class representatives have been recognized at an earlier date." Weinberger v. Kendrick, 698 F. 2d 61, 73 (2d Cir. 1982), cert. denied, 464 U.S. 818 (1983).

A. **Is the Proposed Settlement Adequate, Fair, and Reasonable?**

In evaluating the adequacy, fairness, and reasonableness of a settlement, a district court must consider: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. See Wal-Mart Stores, Inc., supra, 396 F. 3d 96 at 117.

Because this class action seeks purely injunctive relief, the most relevant factors "are the reaction of class members to the settlement, the state of the proceedings and the amount of discovery completed, the terms of the settlement, the costs and risk of continued litigation and the likelihood of recovery". Selby v. Principal Mutual Life Insurance Co., 2003 WL 22772330,

*2 (S.D.N.Y. 2003). Consequently, I have not addressed the fifth, seventh, eighth, and ninth factors which relate to monetary damages and the size of the judgment.

### 1. The complexity, expense and likely duration of the litigation.

I find that the "this case implicates complex fact issues." Manchaca v. Chater, 927 F. Supp. 962, 966 (E.D.Tex. 1996) (approving the settlement of a similar class action challenging the Texas Social Security Administration's failure to fulfill certain duties imposed by the Food Stamp Act). At the fairness hearing, plaintiffs' counsel estimated that voluminous document discovery and more than ten depositions would be necessary to complete discovery, and that the trial would last approximately a week.

### 2. The reaction of the class to the settlement.

No class member has objected to the settlement. The terms of the Proposed Settlement reflect that the goals of the litigation have been substantially met. The Proposed Settlement provides nearly all of the relief sought in the amended complaint, namely to ensure the County defendant's compliance with the law applicable to application processing and to hold the State defendants to their obligations to supervise the federal food stamp and Medicaid programs. Although the amended complaint sought a permanent injunction, which will not be afforded by the Proposed Settlement, the Proposed Settlement will ensure that the Court and plaintiffs will be able to monitor the County defendant's performance, and seek to continue the Court's jurisdiction until such time as the County defendant is in compliance (Dkt. #69, ¶29).

### 3. The stage of the proceeding and the amount of discovery completed.

"The stage of the proceedings and the amount of discovery the parties have conducted is relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." In re Gilat Satellite Networks, Ltd., 2007 WL 2743675, *10 (E.D.N.Y. 2007). Although no formal discovery has occurred in this case, by virtue of the informal discovery, plaintiffs' counsel's investigative efforts, and the briefing of various issues, it is clear that plaintiffs' counsel has arrived at this compromise with a full understanding of the legal and factual issues in this case. See id. ("Although little formal discovery has been completed, Lead Counsel has interviewed several former employees of Gilat and obtained a number of internal documents, and all parties have conducted extensive research in connection with their submissions in connection with Defendants' motion to dismiss and in preparation for mediation.").

### 4. The risks of establishing liability.

Although plaintiffs prevailed on their motion for a temporary restraining order at the outset of the litigation, risks of establishing liability remain. As recognized by plaintiffs, "adverse rulings on discovery motions, summary judgment, or motions in limine could have had a significant impact on plaintiffs' ability to present evidence on each claim. Even if plaintiffs had prevailed, the relief might have been delayed for years by post-trial proceedings and appeal"

(Dkt. #69, ¶30). Moreover, the possibility that defendants' procedures would change by the time of trial created uncertainty as to whether a permanent injunction would issue.

### 6. The risks of maintaining the class action through the trial.

The Court has certified the class and no members have opted out or sought decertification. "Because the class certification itself does not appear to be challenged, the risk of maintaining the class action through trial is not an operative factor in considering the [P]roposed [S]ettlement." Banyai v. Mazur, 2007 WL 927583, *11 (S.D.N.Y. 2007).

Based upon the foregoing considerations, I find that Proposed Settlement is fair, adequate and reasonable.

### B.   Is the Proposed Settlement the Product of Collusion?

There is nothing before me to conclude that the Proposed Settlement is the product of fraud or collusion. "The decision by plaintiffs to pursue attorneys' fees and cost subsequent to judicial approval of the settlement agreement demonstrates their commitment to arms-length negotiations." Manchaca, supra, 927 F. Supp. at 966. Consequently, I find that the Proposed Settlement is not the product of collusion.

Mindful of the "strong judicial policy in favor of settlements, particularly in the class action context", I recommend that the Proposed Settlement be approved. Wal-Mart Stores, supra, 396 F. 3d at 116.

## CONCLUSION

For these reasons, I recommend that the Proposed Settlement be accepted. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Rule 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. Thomas v. Arn, 474 U.S. 140, (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a</u>

<u>Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.</u>

**SO ORDERED.**

DATED:		February 13, 2008

_____
/s/ JEREMIAH J. MCCARTHY
United States Magistrate Judge